UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LYNIDA WILLIAMS-SADDLER, as legal guardian of J.W., a minor, | |
| Plaintiffs, | No. 23 C 4815 |
| v. | Judge Thomas M. Durkin |
| CRAIG LANCASTER and CITY OF CHICAGO, | |
| Defendants. | |

**MEMORANDUM OPINION AND ORDER**

Lynida Williams-Saddler, on behalf of minor J.W., alleges excessive force against Chicago Police Officer Craig Lancaster and the City of Chicago. The City has filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). R. 26. The Court requires furthers briefing before deciding the motion.

**Background**

On the morning of May 28, 2023, Lancaster was visiting a friend employed at J.W.'s school. Lancaster and his friend were talking in the school yard as students lined up to enter the school. When J.W. walked past Lancaster's friend, Lancaster pushed J.W. Lancaster's friend then escorted J.W. to the line of students waiting to enter the school. A school security guard approached Lancaster and Lancaster lifted his shirt to display his police badge. After speaking with the security guard, Lancaster left the school grounds.

When this incident was publicized, Lancaster's attorney told the Chicago Tribune: "[Lancaster] acted in a manner to protect the children and staff from a student who clearly was a threat to all present. He was acting within the scope of his duties as a law enforcement officer . . . ." R. 33-1 at 2.

## Analysis

Municipalities can be sued directly under § 1983 for monetary, declaratory, or injunctive relief. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978). But a municipality can be liable only if the alleged constitutional violation was caused by one of the following: (1) an official policy adopted by the municipality; (2) a widespread custom or practice; or (3) an official with final policymaking authority. *See Thomas v. Cook Cnty. Sheriff's Dep't*, 604 F.3d 293, 303 (7th Cir. 2010).

Here, Plaintiffs allege that the City engages in a custom or practice of condoning or failing to address use of excessive force by its police officers. To sufficiently plead the existence of a custom or practice, a plaintiff needs to show that there have been enough similar incidents to establish a pattern of conduct. *See Gill v. City of Milwaukee*, 850 F.3d 335, 344 (7th Cir. 2017). This requirement ensures that a municipality is not held liable for an isolated incident outside of its control. *See Calhoun v. Ramsey*, 408 F.3d 375, 380 (7th Cir. 2005).

Plaintiffs argue that their *Monell* allegations "can be grouped into four categories":

> (1) Specific incidents of excessive force, corruption, coverups, the code of silence, and failure to hold officers accountable for their misconduct, from 1968 through 2023 ([R. 20] at ¶¶ 11, 12, 28-32, 35-46, 48,49, 84-86);

2

> (2) Reports, findings, admissions and allegations by government agencies – and by the then-Mayor of the City of Chicago – regarding the City's structural and widespread custom and practice of unconstitutional policing, including excessive force, the code of silence, and failure to hold officers accountable for their misconduct (*Id.* at ¶¶ 33, 34, 49-68, 82-88);
>
> (3) The City's failure to make significant progress in achieving the goals of the 2019 Consent Decree (*Id.* at ¶¶ 69-83);
>
> (4) Statistics from 2021 and 2022 regarding allegations of excessive force allegations [sic] made to COPA against Chicago police officers. (*Id.* at ¶¶ 92-97.)

R. 34 at 2.[1] While Plaintiffs' summary describes the incidents in the first category as running through 2023, the oldest incident alleged occurred in 2014.

The first category includes long recitations of certain infamous incidents of excessive force by Chicago Police Officers over the last 50 years. The City has moved to strike these allegations under Federal Rule of Civil Procedure 12(f), *see* R. 25, which permits striking allegations that are "redundant, immaterial, impertinent, or scandalous." The City argues that these allegations should be stricken because: (1) they are "immaterial" and "far afield from any relevance to Plaintiff's claims"; (2) they "are scandalous in that they are an attempt to stir emotions [and] cause public outrage against the City and the [Chicago Police Department]"; and (3) which taken together "causes prejudice to the City." *See* R. 25.

---

[1] "COPA" is the City's Civilian Office of Police Accountability.

3

Although these well-known incidents are indeed scandalous, they have some marginal relevance to the case as historical context for the Chicago Police Department's use of force and the City's response to it. Nevertheless, they are so old and outrageous that they are not materially relevant to determining whether the City had a custom or practice of condoning or ignoring use of excessive force in every-day policing in 2023, which is when the incident in this case occurred. Thus, the Court has disregarded these allegations in assessing the plausibility of Plaintiffs' claim against the City and they are ordered to be stricken. However, the Court will permit any amended complaint to make brief reference to this history for contextual purposes.

The most important piece of Plaintiffs' second category of allegations is the 2017 report by the Department of Justice regarding its investigation of the Chicago Police Department.[2] Now nearly as well-known as the incidents in the complaint's historical recitation, the DOJ Report found that the Chicago Police Department "engages in a pattern or practice of unconstitutional use of force." *See Arrington v. City of Chicago*, 2018 WL 620036, at *3 (N.D. Ill. Jan. 30, 2018) (quoting DOJ Report at 22).

The DOJ Report is itself now seven years old, and for that reason another court in this District described it as a "non sequitur" for purposes of establishing a plausible claim against the City for excessive force. *See Taylor v. City of Chicago*, 2021 WL

---

[2] Available at https://www.justice.gov/d9/chicago_police_department_findings.pdf ("DOJ Report").

4523203, at *3 (N.D. Ill. Oct. 4, 2021). The Court is inclined to agree that a seven-year-old report has little to say about the relevant state of affairs in 2023. The same is true for statements and reports by public officials from around the same time as the DOJ Report, which makes up the balance of the allegations in the second category.

Reference to the DOJ Report, however, should not be stricken from the complaint because it is an important point of reference regarding the City's knowledge of the Police Department's use of force. With the issuance of the DOJ Report, the City was put on express notice that the Police Department engaged in a pattern or practice of excessive force. The DOJ Report led to a lawsuit by the State of Illinois and a consent decree in that case, according to which the City committed to reform the Police Department.

The notice provided by the DOJ Report, and the reform commitments embodied in the consent decree, are relevant to the element of deliberate indifference in a *Monell* claim. *See Thomas v. Neenah Joint Sch. Dist.*, 74 F.4th 521, 524 (7th Cir. 2023) ("For a *Monell* claim to survive a motion to dismiss, a plaintiff must plead facts that plausibly suggest that . . . the policy or custom demonstrates municipal fault, i.e., deliberate indifference[.]"). The City's "continued adherence to an approach that [it] know[s] or should know has failed to prevent tortious conduct," like use of excessive force by police officers, "may establish the conscious disregard for the consequences of their action—the 'deliberate indifference'—necessary to trigger municipal liability." *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 407

5

(1997). The DOJ Report is not evidence of a *current* widespread pattern or practice, but it is relevant to whether—if there remains such a pattern or practice—the City has been deliberately indifferent to it.

Plaintiffs argue that the City's continued deliberate indifference to the pattern or practice of excessive force identified by the DOJ Report can be seen in the third and fourth categories of allegations in the complaint. In the fourth category, Plaintiffs point to 496 allegations of excessive force made to COPA in 2021 and 468 more allegations made in 2022 as evidence of a current practice or custom of excessive force during the time period relevant to this case. Condoning what presumably can be accurately characterized as a high number of instances of excessive force could allow the Court to plausibly infer that the City is deliberately indifferent to this conduct, and thereby causes it. Plaintiffs argue further that such a finding is supported by allegations in the third category, including reports and statements from public officials that the City has made little progress is complying with the consent decree. In other words, Plaintiffs argue that with this many allegations of excessive force seven years after the DOJ Report put the City on notice of the existence of a pattern or practice of excessive force among Chicago Police Officers, it is plausible to infer that the City has consciously disregarded it. And it is true that allegations of a practice or custom can be sufficient to also plausibly allege deliberate indifference. *See Stokes v. Ewing*, 2017 WL 2224882, at *3 (N.D. Ill. May 22, 2017) ("deliberate indifference is not an absolute pleading requirement," and separate allegation of deliberate indifference may be unnecessary where a plaintiff "charges [the

6

municipality] with active participation in maintaining a policy that itself licenses unconstitutional conduct").

The problem with this argument is that the number of allegations made to COPA has decreased:

| Year | 2017 | 2018 | 2019 | 2020 | 2021 | 2022 | 2023 |
|---|---|---|---|---|---|---|---|
| No. of Allegations | 736 | 641 | 885 | 1151 | 555 | 440 | 397 |

The Court notes a decrease comparing 2023 to 2017, and more recently from 2021 to 2023.[3]

Other relevant data shows a similar recent decline. The City's Law Department publishes an annual report of "Judgment and Settlement Payment Requests."[4] This report notes the "primary cause" of each payment, including "excessive force" by the Police Department. The Court also takes judicial notice of this information. The Law Department reports show the following:

| Year | 2017 | 2018 | 2019 | 2020 | 2021 | 2022 | 2023 |
|---|---|---|---|---|---|---|---|
| Total Cases | 79 | 82 | 41 | 40 | 49 | 45 | 23 |
| Settlements | 76 | 76 | 38 | 39 | 46 | 43 | 23 |
| Verdicts | 3 | 6 | 3 | 1 | 3 | 2 | 0 |
| Amount $$ Paid | 5,973,723 | 43,994,927 | 8,958,911 | 17,030,486 | 150,782 | 13,904,703 | 110,343 |

---

[3] While Plaintiffs cite only the data from 2021 and 2022, the Court takes judicial notice of the rest. *See Fosnight v. Jones*, 41 F.4th 916, 922 (7th Cir. 2022) ("It's well established that judges may take judicial notice of matters of public record when ruling on a motion to dismiss. And taking judicial notice of matters of public record need not convert a motion to dismiss into a motion for summary judgment."). The Court notes that it found different numbers of allegations in 2021 and 2022 than Plaintiffs alleged in their complaint. The Court believes this difference is due to the Plaintiffs citing COPA's annual report, whereas the Court took data from COPA's "Data Dashboard." *See* COPA Data Dashboard, available here: https://www.chicagocopa.org/data-cases/data-dashboard/.

[4] Available here: https://www.chicago.gov/city/en/depts/dol.html.

7

Similar to the COPA count of allegations, the Law Department's report of excessive force settlements and verdicts paid has decreased substantially since 2017.[5] Indeed, the decrease in lawsuit payments has been steadier over the seven-year period than the decrease in COPA allegations which showed a mid-period increase in 2019-2020.

There is an argument that this publicly available data (some of it cited by Plaintiffs), showing decreases in allegations and lawsuit payments, indicates that the City is no longer maintaining the Police Department's custom or practice of excessive force but working to reform it. And if the City is making a somewhat successful effort to address this problem, it becomes less plausible that the City is deliberately indifferent to what the persistent number of allegations and lawsuits indicate is a continuing practice or custom of excessive force. And that could be a basis to grant the City's motion.

## Conclusion

The parties have not briefed the impact of the publicly available data cited in this opinion on the ability of Plaintiffs to plausibly allege deliberate indifference. This issue must be addressed for the Court to decide the City's motion, so that motion [26] is continued for further briefing. Because the Court has raised issues favorable to the City, the first brief should be a response from Plaintiffs' of no more than ten pages, due May 10, 2024. The City's reply of the same length is due May 24, 2024. The City's

---

[5] Settlements are properly considered support for a Monell claim. *See Valentino v. Vill. of S. Chi. Heights,* 575 F.3d 664, 675 (7th Cir. 2009) (finding that the plaintiff failed to establish a widespread practice because the plaintiff did "not contend that any of these alleged instances of [the complained-of behavior] ever resulted in a meritorious lawsuit *or settlement*") (emphasis added).

motion to strike [25] is granted in part and denied in part in accordance with this order. None of the Court's statements in this opinion should be construed as a ruling on the scope of discovery or what evidence can be admitted at trial, should this case reach either of those stages of litigation.

    ENTERED:

    *Thomas M Durkin*

    Honorable Thomas M. Durkin
    United States District Judge

Dated: April 18, 2024